UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 1:24-cv-23672

AT LAW AND IN ADMIRALTY

TRACEY VALENTINE,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

      Defendant.

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES

The Plaintiff TRACEY VALENTINE hereby sues the Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE and files this Second Amended Complaint for Damages and says:

### THE PARTIES AND JURISDICTION

1.      This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.      **THE PLAINTIFF.** The Plaintiff (hereinafter "Plaintiff" or "VALENTINE") is *sui juris* and is a citizen of the United States of America and resident of Humble, Texas.

3.      **THE DEFENDANT**. The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "CARNIVAL" or "Defendant" or "the cruise line") a citizen of a foreign nation of Panama, is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami

1

Dade County, Florida.  At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.      **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.  Further, this action is being filed in Federal Court in Miami Dade County, Florida as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.      **VENUE AND PERSONAL JURISDICTION**. The Defendant at all times material hereto itself or through an agent or representative in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.      **DATE OF THE INCIDENT.**  The incident occurred on September 30, 2023.

8.      **LOCATION OF THE INCIDENT.**  The incident occurred onboard the vessel the Carnival *Vista*, a ship in navigable water, while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by the General Maritime Law.  Specifically, the Plaintiff's incident occurred at the Waterworks area of Deck 12 of the Carnival *Vista*.

9.      **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **CARNIVAL *VISTA* AND THE DANGEROUS CONDITION.**  CARNIVAL owns and/or operates the Carnival *Vista*. CARNIVAL is in the hospitality business. CARNIVAL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is the Waterworks Water park. On each and every one of CARNIVAL's ships there is a Waterworks Water park. On the Carnival *Vista* the Waterworks Water park is on Deck 12 and opens around 9:00AM each day of the cruise. Carnival *Vista's* Waterworks on Deck 12 features a variety of waterslides, a splash zone, a power drencher and mini racer slides. The Waterworks Water park is encompassed by a Plexi glass wall or barrier that is approximately 10 feet high which is supposed to prevent water from leaking onto the surrounding deck. On the other side of the Plexi glass wall, there is a row of red chairs lined up along the Plexi glass wall or barrier where parents and other guests can sit and while their kids play in the Waterworks Water park. The line up of red chairs sits on a smooth blue flooring that transitions to a wood-like flooring in the walkway.

11.     CARNIVAL offers its passengers water parks as part of its entertainment and amenities for its passengers.  CARNIVAL knows its water park areas are a high traffic area on every one of its ships. CARNIVAL knew or should have known that its water park area floors are

continuously and repetitively wet. CARNIVAL's water park floors, including its surrounding walkways, continuously and repetitively get wet from numerous sources including the water parks' features which splash water onto the floor as well as from passengers repetitively tracking water. CARNIVAL knows that these sources of water cause water to accumulate into large puddles. For that reason, CARNIVAL knows it is extremely important to provide a sufficiently slip resistant floor surface that is appropriate for water parks, including its surrounding walkways. Despite this knowledge, CARNIVAL chose to install a floor material which is not sufficiently slip resistant. Upon information and belief, CARNIVAL's water park floors are made of a colored synthetic floor system made by a company called API.

12. CARNIVAL also knows it is extremely important to warn its passengers that the floors are slippery when wet. CARNIVAL knows that its open decks, including Deck 12, are slippery when wet. CARNIVAL knows that water on the opens decks blends in with the floors. CARNIVAL knows that passengers may not be able to observe that the deck is wet or know the extent of the slipperiness of the wet deck. CARNIVAL knows that passengers may not know how slippery its floors can be when wet let alone wet with suntan lotions and/or body oils. Therefore, Carnival knew or should have known that its passengers may not know that Carnival's water park floors, including its surrounding walkways, can be dangerous. CARNIVAL knows that passengers rely on Carnival to provide amenities and/or activities that are safe for passenger use. CARNIVAL knows that if its water park floors, including its surrounding walkways, are not sufficiently slip resistant, passengers can slip and fall on the wet slippery floors. The cruise line also knows that its water park floors, including its surrounding walkways, accumulate a greasy film from wet passengers dripping suntan lotion and body oils onto its floors. CARNIVAL knew or should have known that the water accumulations on its water park floors, including its surrounding walkways, also accumulate these suntan lotions and oils throughout the day and/or over extended periods of

4

time. CARNIVAL knew or should have known that the combination of water and suntan lotion and/or body oils makes its floors even more slippery than with just water. Because of all of that, CARNIVAL requires its crew members to place yellow caution signs to warn passengers about wet and slippery floors and to regularly dry, dry mop and/or otherwise clean its wet open deck floors.

13. **<u>DESCRIPTION OF THE INCIDENT.</u>** On September 30, 2023, CARNIVAL allowed a large puddle of water, at least 3 feet in width, to accumulate and remain on the open deck floors of Deck 12 near the Waterworks Water park on board the *Carnival Vista*. Carnival knew or should have known about the dangerous condition which existed in the walkway next to the Waterworks water park area on September 30, 2023.  CARNIVAL knew or should have known of this condition because of its large size, shape, characteristics and because the area of water existed on the water park floor for an extended, unreasonably long duration under the circumstances. CARNIVAL failed to squeegee, mop, dry and/or otherwise clean the floor from water accumulations and/or water accumulations with suntan lotions and/or body oils from the floor. CARNIVAL also failed to properly mark this dangerous condition, cordon or block off the area, or timely post warning signs or warn its passengers of this dangerous condition.

14. As a direct result, VALENTINE slipped and fell on the open deck walkway area next to the Waterworks water park on Deck 12 on board the *Carnival Vista*. On the day of the incident, VALENTINE and her family had just boarded the *Carnival Vista*. After getting settled into their cabins, they went out to explore the decks. VALENTINE's kids wanted to go to the Waterworks water park. VALENTINE dropped off her kids at the Waterworks water park and continued to walk around the other decks. Approximately 20-30 minutes later, VALENTINE went back to the Waterworks water park to check on her kids and then continued exploring the rest of the ship. After another 20-30 minutes later, VALENTINE went back to the Waterworks water park to check on her

kids again. This time, VALENTINE and her sister-in-law stayed in the area to wait for the kids and stood against the railing of Deck 12. VALENTINE was looking toward the water slides for her kids and intermittently overlooking Deck 17 where there was a pool deck party because the vessel was departing from the port. Moments later, VALENTINE turns around and sees her younger son on the ground. VALENTINE walks over to her son and helps him up. VALENTINE turned to her right, facing forward, and walked 1-2 steps forward. Suddenly, VALENTINE's left foot slipped from under her, and she lost her balance. Stumbling to catch her balance, she tried to use her right foot to catch herself. Both of VALENTINE's legs spread apart in opposite directions and she fell on the hard floor surface in between the transitional wood deck flooring and the smooth blue flooring of the walkway. While VALENTINE was on the ground, she noticed an accumulated puddle of water under the red chairs located in the area which covered the width of one red chair, approximately 3 feet wide, and trickled a trail of water that measured approximately 1-2 feet in width by 1 foot in length onto the open deck walkway floor. The water on the floor leaked from under the Plexiglass that surrounds the water park. VALENTINE was watching where she was walking. Despite that, VALENTINE could not see the large wet area before she slipped and fell. There were no caution signs in the walkway indicating that the floor was wet and slippery.

15.     VALENTINE reported the subject incident to CARNIVAL immediately. VALENTINE was taken to the medical infirmary on board the *Carnival Vista*. X-Rays were taken and revealed that VALENTINE had sustained a distal fracture of her left tibia and fibula. VALENTINE underwent surgery on October 12, 2024.

16.     **DAMAGES**.  As a result of CARNIVAL's negligence, VALENTINE has suffered and will continue to suffer severe and permanent injuries including but not limited to a fractured left tibia and fibula which required surgery. These are extremely painful injuries and have caused and will continue to cause severe disability with permanent impairment. VALENTINE has

6

suffered these losses in the past and will continue to suffer them in the future. These injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. These injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

17.     **NOTICE: PRIOR SIMILAR INCIDENTS.**     Prior similar incidents show evidence that CARNIVAL had notice of the dangerous condition here. CARNIVAL documents injuries in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. Examples of prior similar incidents known to date include the following:

    a.   Minor Passenger F.C. was severely injured when he slipped and fell on a wet, slippery, dangerous and inadequately safe flooring surface while walking near the Waterworks waterslide area located on Deck 15 on board the *Carnival Dream* on August 12, 2011. *TEA ORIZIO v. Carnival Corporation, Case No. 1:12-cv-22708-PAS.*

    b.   Passenger Wanda Gossett was severely injured when she slipped and her foot became lodged under a stairway as a result of a wet and/or slippery floor surface in the area of the Waterworks activity on board the *Carnival Fascination* on May 14, 2014. *Gossett v. Carnival Corporation, Case No. 1:15-cv-21511-KMW.*

    c.   Minor Passenger J.C. was severely injured when she slipped and/or tripped and fell on a foreign liquid substance while attempting to walk to the stairs in the toddler

Waterworks area located on Deck 10 on board the *Carnival Pride* on May 23, 2017. *J.C., A Minor v. Carnival Corporation, Case No. 1:17-cv-23279.*

d. Minor Passenger A.L. was severely injured when he slipped and fell on the API flooring near the Waterworks area on board the *Carnival Paradise on* November 14, 2023.

18. **NOTICE: CORRECTIVE ACTION.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that the day after VALENTINE was injured, CARNIVAL crewmembers in the area put a caution sign in the area.

19. **NOTICE: THE SIZE OF THE WET AREA.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the size of the wet area. The puddle of water under the red chairs was at least 3 feet wide by 3 feet in length and the trail of trickled water from the puddle onto the deck walkway was at least 1-2 feet wide by 1 foot in length.

20. **NOTICE: LENGTH OF TIME THE DANGEROUS CONDITION EXISTED.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the length of time that the condition existed. In order for the wet area to be as large as it was, the condition existed for an extended period of time.

21. **NOTICE: ON-GOING, REPEATIVE PROBLEM.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that conditions regularly accumulate on its floor of the open deck of Deck 12 on board the *Carnival Vista* and are thus foreseeable conditions.

22. **NOTICE: CREW MEMBERS IN THE VICINITY OF THE SUBJECT AREA.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that there were crew members in the vicinity of the subject area. When

VALENTINE fell, there was a crewmember in the area. He looked over at her when she fell, scuffed, and walked the opposite direction.

23.     **NOTICE: TRAINING AND PROCEDURES AND TRAININGS.**  Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that the cruise line has policies and procedures applicable to the subject area that crew members inspect and maintain the floors in a clean and dry condition.  CARNIVAL specifically trains its crew members to inspect and maintain the deck areas in a clean and dry condition.  CARNIVAL's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured. CARNIVAL also trains and created procedures which require crew members to place wet floor signs on walkways that become repetitively wet and/or are known to be wet. CARNIVAL created this procedure for its crew because CARNIVAL knows that without warnings, passengers may not know or be able to perceive that its floors are wet. CARNIVAL also knows that without warnings passengers may not know how slippery its floors are when wet. This shows that CARNIVAL knew or should have known that its slippery wet deck floor walkways are not an open and obvious condition.

24.     **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") CARNIVAL's open decks are escape routes that CARNIVAL must maintain in a safe, clear, clean and dry condition. Upon information and belief, CARNIVAL, at all relevant times, was aware of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other

industry standards applicable to providing and maintaining safe walkways and floor materials. See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

25. **NOTICE: DESIGN, SELECTION OF MATERALS AND/OR CONSTRUCTION.** CARNIVAL designs, selects materials and constructs its ships including the location of shipboard common areas, flooring and overall architecture.  CARNIVAL participates with and controls the design, construction and selection of materials installed on its ships. CARNIVAL has contracts with the shipyard which allows CARNIVAL the right to inspect the design plans, materials, construction of its ships. CARNIVAL may refuse payment, the ultimate control, should issues regarding design, selection of materials and construction is not resolved to CARNIVAL's satisfaction. CARNIVAL approved and ultimately chose the design, selection of materials and construction of the Waterworks water park and its surrounding walkway flooring on its ships including aboard the *Vista*.  CARNIVAL has chosen and/or allowed the installation of the floor materials used in its water park areas throughout the CARNVAL fleet for years.  This floor material is also used in other areas of CARNIVAL's ships.

26. **NOTICE: OPTION TO INCREASE FLOOR SYSTEM SLIP RESISTANCE**. CARNIVAL has known for years that this synthetic floor material is slippery when wet regardless of where it is installed.  CARNIVAL has a long-standing relationship with the company that makes and/or installs this synthetic floor system. Based on this long-term relationship, CARNIVAL knew or should have known that this floor material can be made more slip resistant if certain coatings and/or materials are added to the floor system.  CARNIVAL knew or should have known that the company that installs and/or makes the floor system offers these additional coatings and/or materials that increase slip resistance. Therefore, CARNIVAL knew or should have known that

these additives and/or coatings significantly increase slip resistance when this floor system is wet. However, CARNIVAL chose not to pay for the design, selection and/or construction of its water park floors, including its surrounding walkways, with these extra materials.

27.     **NOTICE: CARNIVAL'S DOCUMENTATION**. CARNIVAL's knowledge of the dangerousness of its Waterworks water park floors, including its surrounding walkways, is documented in many ways. CARNIVAL logs prior complaints regarding its Waterworks water park floors, including its surrounding walkways, in its guest services databases.  CARNIVAL documents prior incidents of slip and falls in a database. CARNIVAL discusses and documents hazards such as the water park floors, including its surrounding walkways, on its ships during shipboard meetings which are memorialized in meeting minutes. CARNIVAL also regularly inspects and/or tests its water park floors, including its surrounding walkways.  CARNIVAL retains experts and/or contractors who write reports and/or emails to CARNIVAL which provide opinions regarding its slip resistance and/or industry standards.

28.     **VICARIOUS LIABILITY.**  CARNIVAL is a corporation that acts through its employees and crew members. CARNIVAL is vicariously liable and responsible for the negligent acts of its employees and shipboard crew members. Additionally, when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition. Notwithstanding that, CARNIVAL had notice of the dangerous condition as described above.

**COUNT I**
**NEGLIGENT FAILURE TO MAINTAIN**

29.     The Plaintiff, VALENTINE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

30.     This is an action against CARNIVAL for its negligent failure to maintain the floor on the open deck of Deck 12 next to the Waterworks water park onboard the *Carnival Vista* in a safe manner.

31.     **DUTIES OWED BY CARNIVAL.**   CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers, including Plaintiff. CARNIVAL owes a duty as a common carrier to its passengers to maintain all areas of its ship. CARNIVAL's duty of care includes maintaining the floor on the open deck of Deck 12 onboard the *Carnival Vista* in a safe manner including the floor where VALENTINE slipped and fell on September 30, 2023.

32.     CARNIVAL either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraphs 17-28 above and incorporated herein.

33.     **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty to maintain the floor on the open deck of Deck 12 next to the Waterworks water park on board the *Carnival Vista* in a safe manner. CARNIVAL breached its duties to VALENTINE by its actions and conduct. CARNIVAL allowed a large amount of water to accumulate on the pool deck floor, on Deck 12. CARNIVAL allowed this to happen despite knowing that passengers constantly and repetitively track water onto the deck throughout the day when exiting its Waterworks water park, pools, hot tubs and showers. CARNIVAL's crewmembers allowed the water to accumulate and did not clean, dry, mop, or squeegee the water. CARNIVAL failed to regularly inspect the subject area. CARNIVAL also failed to comply with applicable industry standards, statutes, and/or regulations.

34.     **PROXIMATE CAUSE.**   CARNVAL's failure to maintain the floor on the open deck of Deck 12 next to the Waterworks water park on board the *Carnival Vista* in a safe manner on September 30, 2023, proximately caused VALENTINE's injuries. The Defendant's negligent maintenance caused a large amount of water to accumulate and remain on the deck for an extended period of time. The water made the deck unreasonably and unexpectedly wet and slippery. Had

CARNIVAL properly maintained the floor on the open deck of Deck 12 next to the Waterworks water park on board the *Carnival Vista* in a safe manner, VALENTINE would have never slipped and fell on the walkway on Deck 12 next to the Waterworks water park on the *Carnival Vista* on September 30, 2023.

35.     **DAMAGES.**  As a result of CARNIVALS's negligent maintenance, Plaintiff has and will suffer damages in the past and in the future as described in paragraph 16 and incorporated herein.

WHEREFORE, the Plaintiff, VALENTINE, demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO WARN**

36.     The Plaintiff, VALENTINE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

37.     This is an action against CARNIVAL for its negligent failure to warn passengers, including VALENTINE, of its hazards, risks or dangers onboard the *Carnival Vista.*

38.     **DUTIES OWED BY CARNIVAL.**     CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. The Defendant owes a duty to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL's duty of care includes warning of dangerous conditions on board the *Carnival Vista* including the floor on

the open deck of Deck 12 next to the Waterworks water park where VALENTINE slipped and fell on September 30, 2023.

39.     CARNIVAL either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraphs 17-28 above and incorporated herein.

40.     **CARNIVAL BREACHED ITS DUTIES.**  CARNIVAL breached its duty to warn VALENTINE of the dangerous conditions onboard the *Carnival Vista* including where VALENTINE slipped and fell on September 30, 2023. CARNIVAL breached its duties to the Plaintiff by its actions and conduct.  CARNIVAL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the open deck of Deck 12 where VALENTINE slipped and fell on September 30, 2023.  CARNIVAL and CARNIVAL's crew members failed to make audible announcements that the open deck and/or Waterworks area floors are dangerous and can be slippery when wet. CARNIVAL's crew members failed to cordon off the open decks or place physical barriers on the floors or otherwise to prevent access to the wet floors. CARNIVAL also failed to comply with applicable industry standards, statutes, and/or regulations.

41.     **PROXIMATE CAUSE.**  CARNIVAL's failure to properly warn VALENTINE of the dangerous conditions on board the *Carnival Vista* including the open deck of Deck 12 where VALENTINE slipped and fell on September 20, 2023, proximately caused the Plaintiff's injuries. Had CARNIVAL properly warned VALENTINE of the dangerous condition, VALENTINE would have been aware of the dangerous condition. VALENTINE therefore would not have slipped and fallen on the open deck floor on Deck 12 next to the Waterworks water park onboard the *Carnival Vista* on September 30, 2023.

42.     **DAMAGES.** As a result of CARNIVAL's negligent failure to warn, Plaintiff has and will suffer damages in the past and in the future as described in paragraph 16 and incorporated herein.

14

WHEREFORE, the Plaintiff, VALENTINE, demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT TRAINING OF PERSONNEL**

43.     The Plaintiff, VALENTINE, hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

44.     This is an action against CARNIVAL for its negligent training of shipboard crewmembers.

45.     **DUTIES OWED BY CARNIVAL.** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIIVAL owes a duty as a common carrier to its passengers to train its crew members to properly inspect, clean, dry and warn of dangers known to CARNIVAL where CARNIVAL invites or reasonably expects passengers to go. CARNIVAL's duty of care includes training its crew members to inspect, clean, dry and warn passengers about dangerous conditions on board the *Carnival Vista* including where VALENTINE slipped and fell on September 30, 2023.

46.     CARNIVAL either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraphs 17-28 above and incorporated herein.

47.     CARNIVAL should have become aware and could have easily discovered that it had failed to properly train its crew members given that the crew member(s) failed to inspect and clean and dry the subject area.

48.     CARNIVAL should have become aware and could have easily discovered that it had failed to properly train its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Vista* including where VALENTINE was injured on September 30, 2023.

49.     **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty of care owed to VALENTINE and was negligent by failing to reasonably train its crewmembers to inspect, clean, dry and warn passengers of the dangerous conditions on board the *Carnival Vista* including the subject area where VALENTINE slipped and fell on September 30, 2023. CARNIVAL failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors. CARNIVAL failed to ensure the implementation or operation of its training programs described in paragraph 23 and incorporated herein.

50.     At the time VALENTINE fell on the open deck floor of Deck 12, the crew members that were responsible for warning, cleaning, drying and inspecting that area failed to do so. Because those crew members were not properly trained, those crewmembers failed to properly and adequately warn passengers, like VALENTINE, of the dangerous conditions on board the *Carnival Vista* including the subject area where VALENTINE slipped and fell on September 30, 2023. Because those crew members were not properly trained, those crewmembers also failed to properly inspect, clean, and dry the area.

51.     **PROXIMATE CAUSE.** CARNIVAL's failure to properly train its crew members proximately caused VALENTINE's injuries. Had CARNIVAL properly trained its crew members

to inspect, clean, dry, and warn passengers about the dangerous conditions on board the *Carnival Vista* including the subject area where VALENTINE slipped and fell on September 30, 2023, the crewmembers would have inspected, cleaned, dried, and warned VALENTINE about the dangerous condition. If CARNIVAL had properly trained its crew members, the dangerous condition would not have existed. If CARNIVAL had properly trained its crew members, VALENTINE would have been aware of the dangerous condition.  VALNETINE therefore would never have slipped and fell on the open deck floor on Deck 12 on September 30, 2023.

52.    **DAMAGES**. As a result of CARNIVAL's negligent training, Plaintiff has and will suffer damages in the past and in the future as described in paragraph 16 and incorporated herein.

WHEREFORE, the Plaintiff, VALENTINE, demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT DESIGN, CONSTRUCTION**
**AND SELECTION OF MATERIALS**

53.    The Plaintiff, VALENTINE, hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

54.    This is an action against CARNIVAL for its negligent design, construction and selection of the subject flooring.

17

55. **<u>DUTIES OWED BY CARNIVAL.</u>** CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers. CARNIVAL owes a duty of reasonable care under the circumstances. CARNIVAL's duty to design, construct and select materials for all areas and features of its vessels, including the subject area, is part of CARNIVAL's duty of reasonable care under the circumstances. CARNIVAL had a duty to design the subject area including the flooring in a reasonably safe manner and in accordance with industry standards.

56. CARNIVAL custom designed and custom built the *Carnival Vista* to CARNIVAL's specifications. CARNIVAL participated in and/or approved of the design of the subject area including the subject flooring. CARNIVAL participated in and/or approved of the selection of the materials for the subject area including the subject flooring. CARNIVAL participated in and/or approved of the installation of the materials for the subject area including the subject flooring. CARNIVAL chose to install this same and/or similar flooring throughout its fleet. CARNIVAL continues to repair, modify and/or install the same and/or similar flooring on all its ships, including the *Carnival Vista*. At all times CARNIVAL had the ultimate control over the design and construction of the *Carnival Vista*. CARNIVAL had the right to inspect both the designs on paper and the design and construction at the yard. CARNIVAL had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Carnival Vista* including the subject area and flooring. CARNIVAL had the right to reject any and all items, designs and construction. CARNIVAL holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. CARNIVAL approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that CARNIVAL has operated and maintained the ship continuously since on or about December 2023.

57. CARNIVAL either had actual notice and/or had constructive notice of the dangerous condition as alleged in paragraphs 17-28 above and incorporated herein.

58. CARNIVAL knew or should have known that the open deck flooring it chose and installed on Deck 12 on the *Carnival Vista* was unreasonably dangerous and slippery when wet.

59. CARNIVAL knew or should have known of the dangerousness of the subject area including the subject floor since their installation in 2015.

60. **CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duties of care owed to VALENTINE and was negligent by approving, designing, constructing, and/or selecting subject area including the subject flooring for the open deck of Deck 12 on board the *Carnival Vista.* CARNIVAL failed to design, construct, select, approve and/or select materials that complied with industry standards. The design and/or materials CARNIVAL chose, selected, approved of, and installed for the subject area including the subject flooring on Deck 12 on board the *Carnival Vista* was unreasonably dangerous.

61. **PROXIMATE CAUSE.** CARNIVAL's negligent design, construction, and selection of the flooring for the open deck of Deck 12 on board the *Carnival Vista* proximately caused VALENTINES's injuries. Had CARNIVAL properly designed, constructed and selected the floor of the open deck of Deck 12 on board the *Carnival Vista,* VALENTINE would have never slipped and fallen on September 30, 2023.

62. **DAMAGES.** As a result of CARNIVAL's negligent design, construction and selection of materials, Plaintiff has and will suffer damages in the past and in the future as described in paragraph 16 and incorporated herein.

WHEREFORE, the Plaintiff, VALENTINE, demands Judgment against CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in

the future; damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

Respectfully submitted,

By: *s/ Sarah A. Lobel*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**SARAH A. LOBEL, ESQ.** (FBN 88716)
slobel@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
12150 SW 128th Court, Suite 225
Miami, Florida 33186
Tel: (305) 371-8000/Fax: (305) 371-3542
*Counsel for the Plaintiff*

20

## **CERTIFICATE OF SERVICE**

We hereby certify that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this _____ day of June 2025. We also certify that the foregoing was served on all counsel or parties of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

s/*Sarah A. Lobel*
Sarah A. Lobel, Esq.
FBN: 88716

TRACEY VALENTINE v. CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE,
CASE NO. 1:24-cv-23672-DPG

<table>
<tr>
<td>

**John H. Hickey, Esq.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**Sarah A. Lobel, Esq.** (FBN 88716)
slobel@hickeylawfirm.com
tlantigua@hickeylawfirm.com
**Hickey Law Firm, P.A.**
12150 SW 128th Court, Ste. 225
Miami, FL  33186
Tel. (305) 371-8000
Fax: (305) 371-3542
*Counsel for Plaintiff*

</td>
<td>

**Michael Drahos, Esq.** (FBN 0617059)
michael.drahos@gray-robinson.com
**Walter Cooper Jarnagin, Esq.** (FBN 117767)
Cooper.jarnagin@gray-robinson.com
**Ashley N. Genoese, Esq.** (FBN 1019357)
ashley.genoese@gray-robinson.com
lila.parker@gray-robinson.com
**GrayRobinson, P.A.**
515 North Flagler Drive, Suite 650
Miami, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5745
*Counsel for Defendant*

</td>
</tr>
</table>