**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-23672-GAYLES/Shaw-Wilder**

TRACEY VALENTINE,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

**DEFENDANT'S PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant, CARNIVAL CORPORATION ("Carnival"), by and through undersigned counsel, and pursuant to this Court's Orders [ECF Nos. 17 and 51], hereby files its Proposed Findings of Fact and Conclusions of Law as follows:

## I.     PROCEDURAL BACKGROUND

1. This is a maritime personal injury action wherein Plaintiff, Tracey Valentine, injured her left ankle after falling on the deck next to an aquatics park onboard the Carnival *Vista* cruise ship on September 30, 2023. ECF No. 35.

2. Plaintiff filed her operative Second Amended Complaint on June 6, 2025. *Id*.

3. Within Count I, Plaintiff alleges Carnival breached a duty of reasonable care to her by failing to regularly inspect Deck 12 next to Waterworks and allowing a large amount of water to accumulate. *Id*. at ¶¶ 29 – 35.

4. Within Count II, Plaintiff alleges Carnival failed to warn her that the floors could be slippery when wet. *Id*. at ¶¶ 36 - 42.

1

5.      Within Count III, Plaintiff alleges Carnival failed to reasonably train its crewmembers to inspect, clean, dry and warn passengers of the Deck 12 area. *Id*. at ¶¶ 43 - 52.

6.      Within Count IV, Plaintiff alleges Carnival was negligent by approving, designing, constructing, and/or selecting an unreasonably dangerous floor surface on Deck 12. *Id.* at ¶¶ 53 - 62.

7.      On June 20, 2025, Carnival filed its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint. ECF No. 39.

## II.      APPLICABLE LEGAL PRINCIPLES

### a.   General Maritime Law

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).

That a passenger becomes injured does not give rise to a presumption that an unreasonable danger existed. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006). Rather, there must be some failure to exercise due care before liability can be imposed, as it is well established that Carnival is not liable to passengers as an insurer. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence.").

A cruise ship operator owes it passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x. 595, 600-01 (11th Cir. 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).

To establish negligence, Plaintiff has the burden to prove: (1) Carnival had a duty to protect Plaintiff from a particular hazard; (2) Carnival breached that duty; (3) Carnival's breach actually

and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

b. Notice

Plaintiff must prove Carnival knew or should have known there was a non-obvious risk-creating condition to her. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020). Under this standard, plaintiffs must show, "as a prerequisite to imposing liability, that the carrier ... had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[T]he maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020) ("[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it.").

Without evidence of notice, Plaintiff cannot prove Carnival owed her a duty. *Sutton v. Royal Caribbean Cruises Ltd.*, 774 Fed.Appx 508, 511 (11th Cir. 2019) (affirming summary judgment where plaintiff identified no prior incidents, accident reports, passenger reviews or complaints, or any other documents evidencing any actual or potential safety issues involving lighting machine); *Cohen v. Carnival Corp.*, 945 F.Supp.2d. 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspections.")

Plaintiffs can show constructive notice in two ways. "First, a plaintiff can establish constructive notice by showing that a 'defective condition existed for a sufficient period of time to

invite corrective measures.' Second, a plaintiff can show evidence of 'substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Tesoriero*, 965 F.3d at 1178–79 (quoting *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)).

"Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed.Appx. 905, 908 (11th Cir. 2017) (citing *Chaparro*, 693 F.3d at 1337).

      c.  Notice is Required and Plaintiff Cannot Claim Carnival "Created" the <u>Dangerous Condition.</u>

The Eleventh Circuit unambiguously "rejected the possibility that [a cruise] operator could be liable in the absence of actual or constructive notice." *See Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 567 (11th Cir. 2017) (discussing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1357 (11th Cir. 1990)). The Eleventh Circuit's *Yusko v. NCL (Bahamas), Ltd.* opinion soon followed which re-affirmed the notice requirement under a direct liability theory where a passenger seeks to hold a shipowner liable for maintaining a dangerous premises. 4 F.4th 1164, 1170 (11th Cir. 2021).

      d.  <u>Negligent Training</u>

"Negligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury." *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914, at *9 (S.D. Fla. April 23, 2021) (quoting *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016)).

e.  Negligent Design

"A cruise line is not liable for any alleged improper design if the plaintiff does not establish that the ship-owner or operator was responsible for the alleged improper design." *Mendel v. Royal Caribbean Cruises, Ltd.*, No. 10-23398-CIV, 2012 WL 2367853, at *2 (S.D. Fla. June 21, 2012) (citing *Groves v. Royal Caribbean Cruises Ltd.*, 463 Fed.Appx. 837 (11th Cir. 2012) (affirming summary judgment where plaintiff-passenger presented no evidence that defendant cruise line "actually created, participated in, or approved the alleged negligent design of these areas near the dining room where [plaintiff] was injured."); *Rodgers v. Costa Crociere, S.P.A.*, 410 Fed.Appx. 210 (11th Cir. 2010) (affirming pre-trial summary judgment of improper design and installation of stairs where there was no evidence that cruise line actually designed the stairs); *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1194 (S.D. Fla. 2016) (granting summary judgment where there was no evidence in the record NCL installed, manufactured, or designed deck surface); *Diczok v. Celebrity Cruises, Inc.*, 263 F.Supp.3d 1261 (S.D. Fla. 2017) (granting summary judgment where plaintiff did not show cruise line actually participated in or approved the design of a table that he ripped over).

f.  Open and Obvious / Comparative Fault

Carnival had a duty to warn only of conditions that are not open and obvious to passengers. *Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous condition negates liability for failure to warn."). This is because, as a matter of law, Carnival can rely on its passengers to use their ordinary senses to protect themselves. *See Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. 40, 42 (S.D. Fla. 1986) ("[D]efendant is entitled to expect, as a matter of law, that plaintiff would perceive that which would be obvious to her upon the ordinary uses of her senses.").

The absence of a duty to warn does not preclude a negligence maintenance claim. The Eleventh Circuit has adopted the Restatement (Third) of Torts, providing that the "open and obvious nature of a dangerous condition [i]s a factor to be considered in a comparative fault analysis – not as a bar to liability for negligently maintaining a premises." *Carroll*, 955 F.3d at 1268. As *Carroll* explained, a cruise ship operator "may still be liable for maintaining a dangerous condition even if the danger was obvious." *Id.* at 1267. However, whether a dangerous condition is open and obvious can mitigate – or even eliminate – damages when evaluating a plaintiff's comparative fault. *See id*. at 1268-69.

g.   Proximate Cause

A plaintiff must prove the defendant's breach of duty proximately caused the claimed injuries. *Lipkin v. Norwegian Cruise Line, Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) is instructive. The *Lipkin* plaintiff alleged failure to warn, but did not offer evidence supporting that, "had the [cruise line] adequately discharged its duty to warn of the dangers of wheelchairs on walkways, Plaintiff would not have stepped onto the walkway behind the unknown elderly woman pushing the wheelchair." Without evidence to support that the cruise line's actions or omissions were an actual and proximate cause of the plaintiff's injuries, a negligence claim cannot survive.

*Lucas v. Royal Caribbean Cruises, Ltd.*, No. 19-20914-CIV-Scola, 2020 3507634 (S.D. Fla. June 1, 2020) also addressed the proximate cause issue. The plaintiff was injured after colliding with a backward skater on an ice rink. She alleged the cruise line was negligent for failing to warn of the dangers associated with backward skating and failing to prevent the skater from traveling backward.

Following a bench trial, the court found there was no duty to warn or prevent backward skating because the dangers are open and obvious. But assuming *arguendo* there was a duty to

6

warn, intervene, or admonish backward skating, "no credible evidence was presented to show that, had [the cruise line's] staff previously warned the backwards skater, he would not have resumed skating backwards, regardless, after being admonished not to." *Id*. at \*13; *see also* Order Denying Motion for New Trial, 2020 WL 5215407 (S.D. Fla. Sept. 1, 2020) ("[E]ven if there should have been such a policy [to prevent backwards skating], Lucas provided no facts to support her conclusory theory that warning the male skater not to skate backward would have stopped him from thereafter skating backward for the rest of the skate session…Without the [backward] skater's testimony, it is nearly impossible for Lucas to show proximate cause.").

      h.   <u>Failure to Mitigate Damages</u>

Failure to mitigate damages is a valid defense in admiralty cases. *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000); *Jennings v. Carnival Corp.*, No. 22-CV-20205, 2022 WL 1913249, at \*3 (S.D. Fla. May 17, 2022), *report and recommendation adopted*, No. 1:22-CV-20205, 2022 WL 1908949 (S.D. Fla. June 3, 2022) (same).

      i.   <u>Reasonable Past Medical Expenses</u>

The appropriate measure of past medical expense damages in a maritime tort cause is the amount determined to be reasonable by the jury "upon its consideration of all relevant evidence, including the amount billed, the amount paid, and any expert testimony and other relevant evidence the party may offer." *Higgs v. Costa Crociere, S.p.A.*, 969 F.3d 1295, 1317 (11th Cir. 2020).

## III.    PROPOSED FINDINGS OF FACT

1.     Ms. Tracey Valentine ("Plaintiff") was a fare-paying passenger who boarded the Carnival *Vista* vessel in Galveston, Texas for a vacation cruise on September 30, 2023. Plaintiff Deposition at 70:23 – 71:2.

2.  That same day, Plaintiff joined her family at the Waterworks aquatic park on Deck 12 of the ship. *Id*. 89:8 – 12.

3.  The subject deck surface is API Syntheteak – designed specifically for open deck use and for its slip resistance properties. *See* API USA Product Specifications.

4.  Carnival performs annual testing on this surface to ensure compliance with slip resistance standards. *See* GR497, CCL Slip Resistance Testing.

5.  Carnival's slip resistance testing of API Syntheteak in the years prior to Plaintiff's incident returned results in excess of industry standards. *Id*.

6.  Plaintiff stood near a railing next to the Waterworks aquatic park for 45 – 60 minutes while her children played within the aquatic park. *Id*. at 90:22 – 91:1; 91:6 – 92:12.



Exhibit C to Plaintiff's Deposition, Red Circle indicating Plaintiff's position next to railing.

7.      Prior to arriving at the Waterworks aquatic park, Plaintiff began purchasing alcoholic beverages around 2:30 p.m. that afternoon. *Id*. at 94:19 – 95:8.

8.      Prior to her fall, Plaintiff purchased several alcoholic margarita pitchers for herself, her mom, and sister-in-law. Point of Sale Receipts; Plaintiff's Deposition at 95:24 – 98:16. Plaintiff admitted to sharing and consuming the margarita pitchers. *Id*.



**Sail & Sign POS**
Voyage VS20230930007
Receipt# 117225518

| Date/Time | Location/Description | Receipt | Folio | Total Charges |
|---|---|---|---|---|
| 09/30/2023 02:32:47 PM | BREEZE LOBBY BAR | 117225518 | 81991S | $32.67 |

| Qty | Items | Total Charges |
|---|---|---|
| 1 | TX/AL Daiquiris | $12.50 |
| 1 | TX/AL The Cruiser Classic | $11.00 |
| | GRATUITY | $4.23 |
| | EXTRA TIP | $3.00 |
| | TAX | $1.94 |
| | GRAND TOTAL | $32.67 |
| | *N/A* | |

| **Guest Name** | TRACEY  VALENTINE |
|---|---|

9



**Sail & Sign POS**

Voyage VS20230930007

Receipt# 269226111

| Date/Time | Location/Description | Receipt | Folio | Total Charges |
|---|---|---|---|---|
| 09/30/2023 03:07:28 PM | BLUE IGUANA BAR | 269226111 | 81991S | $50.45 |

| Qty | Items | Total Charges |
|---|---|---|
| 1 | TX/AL Pitcher Margarita 48oz | $36.00 |
| | GRATUITY | $6.48 |
| | EXTRA TIP | $5.00 |
| | TAX | $2.97 |
| | GRAND TOTAL | $50.45 |

| |
|---|
| *N/A* |

**Guest Name**          TRACEY  VALENTINE



**Sail & Sign POS**

Voyage VS20230930007

Receipt# 269228073

| Date/Time | Location/Description | Receipt | Folio | Total Charges |
|---|---|---|---|---|
| 09/30/2023 04:52:03 PM | BLUE IGUANA BAR | 269228073 | 81991S | $54.24 |

| Qty | Items | Total Charges |
|---|---|---|
| 1 | TX/AL Pitcher Margarita 48oz | $36.00 |
| 1 | BB Mug Root Beer GL | $3.00 |
| | GRATUITY | $7.02 |
| | EXTRA TIP | $5.00 |
| | TAX | $3.22 |
| | GRAND TOTAL | $54.24 |

| |
|---|
| *N/A* |

**Guest Name**          TRACEY  VALENTINE



Point of Sale Receipts.

9.  During the 45 – 60 minutes spent near the aquatics park, Plaintiff left the area briefly to purchase another margarita pitcher. *Id*. at 112:7 – 14.

10.  Prior to her fall, Plaintiff was drinking straight from the margarita pitcher. Erika Cisneros Deposition at 60:18 – 22.

11.  Nonetheless, Plaintiff appreciated that people using the Waterworks aquatic park could use the pathway next to the railing as a means of transportation. Plaintiff's Deposition at 117:2 – 13.

12.  Once she was ready to leave the railing next to the Waterworks aquatic park, around 6:00 p.m., Plaintiff scooted back one to two steps, rotated her body, and took three to four steps towards the staircase and fell. *Id*. at 136:7 – 18; 138:15 – 139:5.

13.  Plaintiff was looking straight ahead and not at the ground at the time she fell. *Id*. at 139:6 – 17.

14. Onboard security responded to the scene and utilized a body worn camera while assisting Plaintiff at the site of the fall. *See* Body Worn Camera Footage.

15. A caution wet floor sign is visible in this recording. *Id.*; Plaintiff's Deposition at 143:21 – 144:8.



Figure 6. Screenshot of bodycam footage produced in discovery

16. Security who responded to the scene observed that Plaintiff was "apparently inebriated as indicated by her slurred speech and strong alcoholic breath." *See* Security Watch Report from Security Officer Shamsheer Abdul.

17. After she was assisted to the ship's medical center, Plaintiff reported to the medical staff she had four alcoholic drinks. *See* Onboard Medical Chart; Plaintiff's Deposition at 156:6 – 157:6.

18. An alcohol restriction was applied to Plaintiff's onboard account. *See* Security Watch Report from Security Officer Shamsheer Abdul.

19. Within the medical center, Plaintiff was advised she sustained a suspected bimalleolar left ankle fracture. *See* Onboard Medical Chart.

20. Plaintiff was advised to attend a shoreside orthopedic consultation, as possible surgical intervention was required, but Plaintiff declined this referral. *Id*.; *see also* Against Medical Advice Form.

21. Plaintiff continued sailing on the *Vista*, attending port stops in Jamaica, Grand Cayman, and Cozumel, before debarking the vessel in Galveston, Texas on October 7, 2023. *See* Movement Report.

22. Thereafter, Plaintiff was diagnosed with a left ankle trimalleolar ankle fracture and underwent an open reduction with internal fixation surgery on October 12, 2023. *See* Medical Records from the Woodlands Sports Medicine Centre.

23. At trial, Defendant offered opinions from its toxicology expert Dr. Bruce Goldberger.

24. Dr. Goldberger testified that the consumption of four-alcohol containing beverages will lead to the impairment of normal faculties and an increase in the risk of sustaining an injury.

25. Dr. Goldberger opined that Plaintiff was under the influence of alcohol at the time of the incident that rendered her a hazard to herself.

26. Plaintiff maintained health insurance that covered medical treatment of her injuries. The amount for this medical treatment <u>billed</u> by her providers totals $47,032.65. The amount actually <u>paid</u> by her insurance to the medical providers totals $11,325.50. *See* Medical Claims Insurance Records Received from Conduet Payment Integrity Solutions.

## IV.     PROPOSED CONCLUSIONS OF LAW

27.     Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).

28.     A cruise ship operator owes it passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x. 595, 600-01 (11th Cir. 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).

29.     That a passenger becomes injured does not give rise to a presumption that an unreasonable danger existed. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006). Rather, there must be some failure to exercise due care before liability can be imposed, as it is well established that Carnival is not liable to passengers as an insurer. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence.").

30.     To establish negligence, Plaintiff has the burden to prove: (1) Carnival had a duty to protect Plaintiff from a particular hazard; (2) Carnival breached that duty; (3) Carnival's breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

31.     At the outset, the Court finds that the presence of water next to an aquatics park is an open and obvious condition that a reasonable person can appreciate through the use of his or her ordinary senses. *Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous condition negates liability for failure to warn."). The evidence at trial indicated that Plaintiff was present next to the Waterworks aquatic park for nearly an hour while her children transited in and out of it.

32.     As to Count II – Plaintiff's failure to warn claim – the Court therefore concludes that Carnival owed no duty to warn Plaintiff of the potential presence of water in the area of her fall. Further, even assuming Carnival owed Plaintiff a duty to warn, evidence at trial also indicated that a "Caution Wet Floor" sign was present in the area of Plaintiff's fall. Thus, Carnival fulfilled any alleged duty to warn Plaintiff of the condition she complains of here.

33.     Most importantly, the Court finds that Plaintiff did not prove by a preponderance of the evidence that Carnival's alleged negligence was the proximate cause of her injuries.

34.     A plaintiff must prove the cruise line's breach of duty proximately caused the claimed injuries. Without evidence to support an allegation that the cruise line's actions or omissions were an actual and proximate cause of the plaintiff's injuries, a negligence claim cannot survive. *Gould v. Carnival Corp.*, No. 19-cv-20289, 2021 WL 4189588, at *20 (S.D. Fla. Sept. 15, 2021); *Cole v. Carnival Corp.*, No. 23-60532-CIV, 2025 WL 2906132, at *8 (S.D. Fla. Jan. 3, 2025).

35.     Across all four counts of Plaintiff's Second Amended Complaint, Plaintiff bears the burden of proving Carnival's breach of its duty of reasonable care was the proximate cause of her injuries.

36.     The evidence at trial instead indicates Plaintiff's own actions were the cause of her injuries. Plaintiff admitted to consuming several alcoholic beverages in the hours immediately prior to and leading up to her fall. Onboard documentation, witness observations, Plaintiff's admissions, and Defendant's expert testimony all indicate that Plaintiff was intoxicated at the time of her incident. As addressed by Defendant's expert toxicologist Dr. Goldberger, the Court concludes Plaintiff was under the influence of alcohol at the time of the incident that rendered her a hazard to herself.

37.     The Court therefore finds concludes that Plaintiff's own actions were the proximate cause of her fall.

38.     In sum, Plaintiff's claimed injury was not caused, directly or indirectly, by any negligence of Carnival.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendant, CARNIVAL CORPORATION, is entitled to judgment in its favor as to Counts I, II, III, and IV of the Second Amended Complaint.

2.  Plaintiff, Tracey Valentine, will take nothing in this action.

3.  Carnival is entitled to reasonable taxable costs pursuant to Federal Rule of Civil Procedure 54, which are to be determined upon the filing of an application consistent with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida.

4.  Final Judgment will be entered in favor of Carnival by separate order.

**DONE and ORDERED** in Chambers in Miami, Florida, this _____ day of _____, 2026.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

Dated: July 1, 2026

                                        Respectfully submitted,

                                        GrayRobinson, P.A.
                                        515 North Flagler Drive, Ste. 650
                                        West Palm Beach, Florida 33401
                                        Tel: (561) 268-5727
                                        Fax: (561) 268-5747

By: */s/ Cooper Jarnagin*

Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
W. Cooper Jarnagin
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
Ashley Genoese
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com

17